# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RHONDA K. WHEAT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-10-224-FHS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Rhonda K. Wheat (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. See, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant - taking into account his age, education, work experience, and RFC - can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on December 8, 1973 and was 35 years old at the time of the ALJ's decision. Claimant completed her high school education with some vocational education. Claimant has worked in the past as an emergency medical technician and home health aide.

Claimant alleges an inability to work beginning October 1, 2004 due to limitations caused by multiple left ankle tendon tears requiring surgical repair and a calcaneal osteotomy, obesity, asthma, attention deficit disorder, depression, and anxiety.

**Procedural History**

On August 10, 2006, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On January 22, 2009, an administrative hearing was held before ALJ Michael A. Kirkpatrick in Ada, Oklahoma. On March 3, 2009, the ALJ issued an unfavorable decision on Claimant's applications. On April 27, 2010, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of sedentary

work.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in relying upon the grids to deny Claimant disability benefits.

## Application of the Grids

On November 4, 2004, Claimant was attended by Dr. W. Bentley Edmonds, complaining of left hindfoot paint and swelling after she twisted her ankle and felt a pop while she was arising from a chair. (Tr. 252). Claimant was diagnosed with likely posterior tibial tendon disease. Dr. Edmonds ordered an MRI, prescribed a walking boot and an anti-inflammatory. Id.

On November 9, 2004, Claimant underwent an MRI scan of her left ankle which showed a left posterior tibial tendon tear; sprain, thickening, and granulation of the left anterior talofibular ligament; thickening of the left calcaneofibular ligament consistent with a prior strain; and a mild partial tear of the peroneus brevis tendon. (Tr. 251). During this time, Claimant was limited to light duty of sedentary nature with no repetitive or forceful grasping. (Tr. 250). Claimant continued to experience ankle pain until surgery was recommended by Dr. Edmonds in January of 2005.

On February 7, 2005, Claimant underwent surgical debridement

5

of the left posterior tibial tendon insertion with advancement and reattachment, a flexor digitorum longus to navicular deep tendon transfer, and flexor retinaculum repair. After performing the procedure, Dr. Edmonds diagnosed Claimant with a left posterior tibial tendon interstitial tear. (Tr. 238-40).

On April 28, 2005, Claimant's work restrictions were continued when she stated she had significant hindfoot pain and swelling when she removed her boot. (Tr. 232-33). Claimant continued with pain and swelling with restrictions to sedentary work through June of 2005. (Tr. 227, 229).

On July 8, 2005, Claimant underwent another MRI which revealed a moderate to large amount of scar tissue near her prior surgery which likely indicated a recurrent tear. (Tr. 226). The MRI also showed abnormal signal consistent with Claimant's prior tendon transfer and degenerative subcortical cysts between two bones in the ankle. Id. On July 21, 2005, Claimant continued to experience pain in the mid-portion of her incision. (Tr. 223). Dr. Edmonds contemplated further surgery.

On August 12, 2005, Claimant was attended by Dr. Paul Kammerlocher, an orthopedic surgeon. Claimant exhibited a positive Tinel's sign at the mid-portion of her scar with radiating electrical pain extending to her talus, tenderness at her medial

6

malleolus scar, and increased valgus deformity of the hindfoot without gastrocnemius tightness or abnormal pulses. Dr. Kammerlocher diagnosed Claimant with a recurrent posterior tibial tendon tear and recommended a calcaneal osteotomy, revised tendon transfer, and possible gastocnemius procedure. (Tr. 219). Claimant returned to work but Dr. Edmonds noted that she could not expect significant improvement without additional surgery. (Tr. 220).

On September 8, 2005, Claimant underwent a imbrication and repair of her posterior tibial tendon, flexor digitorum longus tendon transfer to the midfoot, and a calcaneal osteotomy. Dr. Kammerlocher diagnosed Claimant with posterior tibial tendon tear, tendon insufficiency, and a valgus hindfoot noted. (Tr. 205-06).

On December 30, 2005, Claimant returned to Dr. Kammerlocher reporting improved medial hindfoot pain but also heel pain and tenderness over her hardware. Dr. Kammerlocher removed the hardware on January 3, 2006. (Tr. 192-93).

On January 13, 2006, Claimant reported continued pain to Dr. Kammerlocher's physician's assistant. Claimant reached maximum medical improvement on March 10, 2006. (Tr. 181).

On March 30, 2006, Claimant began seeing Dr. Amar Bhandary, a psychiatrist and neurologist. She reported severe pain and

swelling in her left foot interfered with her daily activities. (Tr. 260-63). Claimant's mood was bad but her objective findings were unremarkable or good. (Tr. 267). Claimant continued seeing Dr. Bhandary for depression and left ankle and foot pain. She took pain medication but the pain remained consistent.

On October 15, 2007, Dr. Bhandary authored a letter wherein he stated "[n]otwithstanding treatment, [Claimant's] pain is crippling and impairs her everyday functioning. Physical mobility is difficult. In addition, she also suffers from Major Depression." He considered Claimant's condition as chronic and severe, such that Claimant could not return to the labor force for an indefinite period of time. (Tr. 465).

On March 28, 2007, Claimant underwent a consultative physical examination by Dr. Chris Vassiliou. Dr. Vassiliou diagnosed Claimant with left foot pain with decreased range of motion secondary to tendon rupture, post surgical repair and calcaneal osteotomy, depression, attention deficit hyperactive disorder, insomnia, and tobacco abuse. (Tr. 422).

On April 9, 2007, Dr. Thurma Fiegel completed a Physical Residual Functional Capacity Assessment on Claimant. She determined Claimant could occasionally lift and/or carry 10 pounds, frequently lift and/or carry less than 10 pounds, stand and/or walk

about 6 hours in an 8 hour workday, sit for about 6 hours in an 8 hour workday, and push and/or pull with no restrictions. (Tr. 426).

In his decision, the ALJ determined Claimant suffered from the severe impairments of status post left ankle tendon rupture with repair. (Tr. 38). The ALJ recognized Claimant's continued claims of severe pain and that the pain affects her depression, causing problems with concentration. (Tr. 42). He rejected, however, Claimant's assertions of pain in intensity, persistence and its limiting effects. (Tr. 43). He noted Claimant "undoubtedly experiences some discomfort from her severe impairment." The ALJ concluded that the pain was not disabling because Claimant has exhibited relatively moderate symptoms. Id. The ALJ is critical of Claimant for not seeking an evaluation or treatment by a specialist. (Tr. 45). The ALJ states he gave due consideration to the letter authored by Dr. Bhandary but refused to give his opinion controlling weight because it was not well-supported and was inconsistent with other medical evidence. Id. The ALJ then applied the grids in finding Claimant was not disabled. (Tr. 46).

The use of the grids is not appropriate unless the ALJ finds "(1) that the claimant has no significant nonexertional impairment, (2) that the claimant can do the full range of work at some RFC

9

level on a daily basis, and (3) that the claimant can perform most of the jobs in that RFC level." Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993). "[D]isability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." Furthermore, "the mere presence of a nonexertional impairment does not automatically preclude reliance on the grids." Channel v. Heckler, 747 F.2d 577 at 582 n.6 (10th Cir. 1984). The presence of nonexertional impairments precludes reliance on the grids only to the extent that such impairments limit the range of jobs available to the claimant. Id.

This Court finds the ALJ's rejection of Dr. Bhandary's opinion as a treating physician and associated support for Claimant's assertions of severe pain to be improper. The ALJ makes several statements which are unsupported. He is critical of Claimant's failure to seek specialized care such as from a orthopedist or neurologist in discounting Claimant's claims of severe pain. (Tr. 45). In doing so, the ALJ failed to recognize Dr. Bhandary is a neurologist. (Tr. 260). The ALJ also improperly inserted his own medical opinion when discussing Dr. Vassiliou's opinion in stating Claimant's reduction in left foot mobility was "expected." (Tr.

45). No medical professional opined that this condition was a normal consequence of Claimant's injury and subsequent surgery.

The ALJ was also critical of Claimant's lack of indicators of severe pain such as muscle atrophy and spasms. (Tr. 43). The medical record indicated that Claimant suffered from muscle atrophy in March of 2005 and that Dr. Bhandary noted Claimant's continued muscle spasms. (Tr. 235, 479-83). Since the ALJ's evaluation of Claimant's credibility on pain as well as his rejection of Dr. Bhandary's opinion as a treating physician are flawed, his application of the grids when a nonexertional impairment may exist is equally lacking. On remand, the ALJ shall both re-evaluate Claimant's pain assertions and the opinion expressed by Dr. Bhandary concerning the severity of Claimant's pain in light of his role as a treating physician.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service

of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 29th day of August, 2011.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE